## **Important Privacy Notice**

Federal Rule of Civil Procedure 5.2 prohibits litigants in a non-habeas proceeding from submitting documents that contain personal information. Unless the Court orders otherwise, personal identifying information in Court filings must be limited as follows:

• Social security numbers, taxpayer-identification numbers, and financial **account numbers must include only the last four digits** (e.g., xxx-xx-1234)

• Birth dates must **include the year of birth only** (e.g., xx/xx/2000)

• Names of persons under the age of 18 must be indicated by **initials only** (e.g., A.B.)

You are responsible for protecting the privacy of this information in your filings. If your documents, including attachments, contain any information that does not comply with this rule, please black out that information before sending your documents to the Court.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## HOW TO PROCEED WITH AN EMPLOYMENT DISCRIMINATION OR REHABILITATION ACT LAWSUIT

### INSTRUCTIONS FOR A PERSON WITHOUT AN ATTORNEY

This packet contains forms to permit you to file the following:

Form 1.        Civil Complaint

Form 2.        Description of Lawsuit for Court Assignment

Form 3.        Application to Proceed <u>In Forma Pauperis</u> (for people unable to pay the filing fee)

Form 4.        Request for Appointment of Attorney

### GENERAL INSTRUCTIONS

## FORM 1 – CIVIL COMPLAINT

You should fill out and file Form 1 – Civil Complaint.   When filling out the complaint, you should remember the following:

1)     You are the plaintiff.   The defendant(s) is the employer(s) being sued.   If you are filing against a government agency or department, use the title of the head of that agency or department – such as Postmaster General, Secretary of the Navy, Secretary of Welfare of Pennsylvania, etc.

2)     Your complaint must be legibly printed by hand or typewritten.

3)     You must personally sign your complaint and declare under penalty of perjury that the facts you allege are correct.

4)     You must attach to the complaint a copy of your Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.   The complaint must be filed within the time specified in your Notice of Right to Sue Letter.

## FORM 2 – DESCRIPTION OF LAWSUIT FOR COURT ASSIGNMENT

When you file your complaint, you must also complete and file an original and one copy of Form 2 – Description of Lawsuit for Court Assignment.

(Rev. 5/2017).

## FORM 3 – MOTION TO PROCEED IN FORMA PAUPERIS ("IFP")

In order for the complaint to be filed, it must be accompanied by the filing fee of $350 plus a $52.00 Administrative Fee.   If you are unable to pay the filing fee, you must file Form 3 – Motion to Proceed In Form Pauperis with the complaint.   On Form 3, you must provide an explanation for why you are unable to pay the filing fee.   For example: "I am unemployed and have no money except unemployment compensation."   Or: "I earn $_____ a week and must support a family of _____."

The judge assigned to your case will decide whether to grant you permission to file your case in forma pauperis.   If the judge grants you permission to proceed in forma pauperis, then the U.S. Marshal's Office will serve copies of your complaint on the defendant(s).   Therefore, you must give the correct name and address of each defendant.

If the judge does not grant permission to proceed in forma pauperis, then you must pay the $350 filing fee.   You then must arrange to serve the complaint on the defendant(s).   The U.S. Marshal's Office will **not** automatically serve the complaint for you if you are not granted in forma pauperis status.

## FORM 4 – REQUEST FOR APPOINTMENT OF ATTORNEY

If you desire to have an attorney and believe you are entitled to have one appointed, you should file Form 4 – Request for Appointment of Attorney.   Attorneys are selected from the Plaintiff's Employment Panel, as outlined in the enclosed Program Description.   Please read this enclosure carefully.

You may obtain a copy of your investigative file.   Federal employees may do so from the federal agency involved by calling that agency.   Other employees can obtain a copy from the Equal Employment Opportunity Commission (EEOC) by writing to:

> Fredricka Warren
> Christine Spriggs
> EEOC, Information Specialists
> 801 Market Street, Suite 1300
> Philadelphia, PA 19107

When you have completed your forms, bring them or mail them to:

> Clerk of Court
> United States District Court
> 601 Market Street, Room 2609
> Philadelphia, PA 19106-1797

If you have any questions, you may call the Clerk's Office at (215) 597-7704 and ask for the Pro Se Writ Clerk.

**NOTE:** You should keep a copy of the forms that you file for your records.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Caption:

_Antoinette M. Barrett_

_____

_____

*Full name(s) of Plaintiff(s)*

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

v.

_Delta Global Services_

_DGS_

_Dal Global Services, LLC_  ( CASE # S33-2019-02043 )

*Full name(s) of Defendant(s)*                    EEOC

**CIVIL ACTION
NO._____**

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to
2000e-17 (race, color, gender, religion, national origin).
***NOTE:** In order to bring suit in federal district court under Title VII, you must first
obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

✓    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621-634.
***NOTE:** In order to bring suit in federal district court under the Age Discrimination
in Employment Act, you must first file a charge with the Equal Employment
Opportunity Commission, and you must have been at least 40 years old at the time
you believe that you were discriminated against.*

✓    Americans with Disability Act of 1990, as codified, 42 U.S.C. §§ 12112-12117.
***NOTE:** In order to bring suit in federal district court under the Americans with
Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal
Employment Opportunity Commission.*

✓    Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat. §§ 951-963
(race, color, family status, religious creed, ancestry, handicap or disability, age,
sex, national origin, the use of a guide or support animal because of blindness,
deafness or physical handicap of the user or because the user is a handler or trainer
of support or guide animals).

(Rev. 10/2009)

**NOTE:** *In order to bring suit in federal district court under the Pennsylvania Human Relations Act, you must first file a complaint with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations, and then you must wait one year prior to filing a lawsuit.*

## I.   Parties in this complaint:

A.   List your name, address and telephone number.   Do the same for any additional plaintiffs named.   Attach additional sheets of paper as necessary.

Plaintiff     Name: Antoinette M. Barrett
Street Address: 8/23 Fayette St.
County, City: Phila. Pa
State & Zip: Pa. 15070
Telephone Number: (602) 367 4725

B.   List all defendants' names and the address where each defendant may be served.   Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page.   Attach additional sheets of paper as necessary.

Defendant     Name: DGL Global Service, LLC
Street Address: 980 Virginia Ave. Fourth Floor
County, City: Atlanta
State & Zip: GA 30354
Telephone Number: 470 552 8060
att BrendaYN Barrell

C.   The address at which I sought employment or was employed by the defendant(s) is:

Employer: DGS (Delta Global Services)
Street Address: 1000 Airport Blvd. (Allegheny County Airport)
County, City: Pittburg
State & Zip: Pa. 15231
Telephone Number: 412 472 3525

## II.   Statement of the Claim

A.   The discriminatory conduct of which I complain in this action includes (*check only those that apply to your case*):

____   Failure to hire me

____   Termination of my employment

____   Failure to promote me

✓  Failure to reasonably accommodate my disability

✓  Failure to reasonably accommodate my religion

✓  Failure to stop harassment

✓  Unequal terms and conditions of my employment

✓  Retaliation

_____  Other (specify): _blocking my medical + life insurance stoping me from living my life, money and 401 K, And personal Property_

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

B.  It is my best recollection that the alleged discriminatory acts occurred or began on or about: (month) _11_ , (day) _25_ , (year) _2018_ .

C.  I believe that the defendant(s) (check one):

✓  is still committing these acts against me.

_____  is **not** still committing these acts against me.

D.  Defendant(s) discriminated against me based on my (*check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged*):

✓  race _Comparing my Physical traits_     ✓  color _Colorism my skin + skin tone And hair texture._

✓  religion _Jehovah Witness_     ✓  gender/sex _Yall Female esp. mix Females_

✓  national origin _Attributes comparing me + Belittling me_

✓  age     My date of birth is _1968_     (*Give your date of birth only if you are asserting a claim of age discrimination*)

E.  The facts of my case are as follow (*attach additional sheets of paper as necessary*):

I have been discriminated against by DGS coworkers, mangers/supervisors on and outside of my Job By them their family and friends lied on, had false paper work turned in by employment coysel, stopped from putting in my complaint, rejected by attorneys scered to go against DGS/Delte a irline Coripidency medical help striped of every human rights
I had to put where I wanted to take my live and left with No digty or self esteem. Notes are attached more texts, paperwork pictures, messigas, dr reprots will be presenting in Court.

-3-

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: Case 533-2019-02043
**Date:** Sun, Sep 19, 2021 9:48 pm

<u>Sent from Yahoo Mail for iPhone</u>

Begin forwarded message:

On Sunday, September 19, 2021, 9:47 PM, toni barrett <toni_barrett@yahoo.com> wrote:

<u>Sent from Yahoo Mail for iPhone</u>

Begin forwarded message:

On Monday, August 10, 2020, 3:07 PM, toni barrett <toni_barrett@yahoo.com> wrote:

Thank you.

<u>Sent from Yahoo Mail for iPhone</u>

On Monday, August 10, 2020, 1:48 PM, JUANITA BARBER
<JUANITA.BARBER@EEOC.GOV> wrote:

Hi Ms. Barrett,
Yes, I got it.
Thanks,
v/r
Juanita

**From:** toni barrett <toni_barrett@yahoo.com>
**Sent:** Monday, August 10, 2020 1:20 PM
**To:** JUANITA BARBER <JUANITA.BARBER@EEOC.GOV>
**Subject:** Case 533-2019-02043

8/5/2020
Barrett V Delta Global Services EEOC
Case # 533-2019-02043
Juanita Barber Investergator:
1000 Liberty Ave. Suite 1112
Pittsburgh Pa 15222
Work: 412 5886916 email: juanita.barber@eeoc.gov

Hi my name is Antoinette M Barrett and I'm putting in an appeal against
Delta Global Services and would my case to be heard because I don't
agree with their response to the chargers of not thinking that they did not

Discriminate against me. I will explain each case that I was discriminated against and show Probable causes why my case should move forward to next level, the reason that their statements are not true and how they are Contradicting and talking around the issue by misleading and avoiding the issue questions and the end results from not addressing these problems from the beginning.

1. The would call me slow ass or old ass , tell me I'm old , say I'm to old to work there , tell me I move to slow to be on their team, they would pick teams and I would be last to be picked or told to go to the Geriatric team. I was called Bengay instead of Barrett. This is why they I asked to be trained it was excuses from Management .

2. They new I was is diabetic: I was not allowed to check my sugar , I was not allow to eat they would throw my food out and when my Diabetes with flareup I was told too bad get my lazy ass up and get to work . I have Severe peanut allergies where I carry two EpiPen's at all times. They would Purposely try to expose me to peanuts to the point I had to keep my food my water and my open coffee in my locker.

3. They new I was Jehovah Witness and used it against me to not promote me to not work with me , to not honor my days off and disrespect and degrade me for my beliefs. I asked for Sunday and Monday off and I was told let me think about when he gave others just to watch game who came to work after me . I was told y'all people and y'all religious beliefs when I begged him and said I will work every holiday because I don't celebrate them nor have younger kids to stay home with and he told me no and the said I'm off Monday and Tuesday and work 1/2 a day Sunday and I should be greatful he allowing me that and I better not be late for my shift or he would take that offer back . They would say and talk so disrespectfully about Jehovah Witnesses like it was a Disease , talk about sex , curse and blow The cigarette smoke in my face during my whole shift

4. Sexual Harassment which I reported nothing done do I brushed off but as I was informed to mention cause it's all tied together. They would constantly lewd jokes in my presence their behavior was offensive and the more I spoke up and tried to stop it towards me and other go workers the worse it got and my job felt like going to hell every day .

5. I was treated so disrespectful because of my race and color Constantly told i was a unholy color brown for a black girl and I must be a Mutt cause I didn't look fully a part of the black peoples race and black people are fast and Athletic and I'm slow stupid and don't understand English more like an Mexican and my son is Spanish so that's rude they lol and started doing sign language and talking to in baby talk asking me do I understand or something would try to speak Broken Spanish or say I bet she understand Blackaknees.

6. The used retaliation on me by changing my hours , tried to change my shift , change my department, had me clean up Vomit and trash no gloves no help, stole all my personal stuff out my locker ( my badge my I'd my son ssi cards my mom personal info for her pass to fly which they never gave her my work gear and my EpiPen's) jobs that they knew I could no do do alone or Qualify or able to do , bullied Intimidated and threatened me to point where it almost cost me my life and I am out of work , had two surges and looking at all kinds of treatments for my back nerve damages and my leg plus I wear a lift in shoes from leg Surgery on top of major mental issues.

On top of other papers and reports, witnesses backing my claims against Delta global services.

Delta global services information/response they turned into the EEOC to my charges against them is a lie I'm out on work due to them I am unable to work and I just had my last interview for ssi because of them . I'm not out due to Covid-19 I will never be normal mentally or physically ever again and I'm getting welfare insurance I don't get unemployment or any family leave I get food stamps and I have to leave with my mom cause I need help. They do not follow guide lines to safe, fear free, and no Discrimination on /at work place rules. Their whole Response was a lie and they have not been doing anything but Retaliating and making my life miserable

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: Antoinette barrett
**Date:** Sat, Sep 18, 2021 12:32 am
**Attachments:**

<u>Sent from Yahoo Mail for iPhone</u>

Begin forwarded message:

On Sunday, August 16, 2020, 8:58 PM, toni barrett <toni_barrett@yahoo.com> wrote:

**11:38**





Work Mikey Delta Boss ›

Jan 28, 2019, 10:24 AM

I should have called ambulance and stayed at work my nose began to bleed when I was leaving we r trying to stop it now my so. Called my dr to see if I can come in or go to ER





Ok let me know if there's anything
I can do

Thank you

Jan 28, 2019, 3:11 PM

Mike this is Barrett I have meds
along with dr note and Referral for
specialist at 830 am in morning, I
will contact you after my
appointment.

iMessage

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: toni barrett
**Date:** Sat, Sep 18, 2021 12:33 am
**Attachments:**

<u>Sent from Yahoo Mail for iPhone</u>

Begin forwarded message:

On Wednesday, December 31, 1969, 7:00 PM, toni barrett <toni_barrett@yahoo.com> wrote:

Antoinette Barrett

**11:58** 

  

**Work Mikey Delta Boss >**

**Jan 28, 2019,** 6:43 PM





Swollen going down , didn't think I hit it that hard will see what it looks like in morning. I left my pink ear muffs if you find can you please put up

Jan 29, 2019, 10:40 AM

Let me know when you're at ticket counter



**NOTE:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, or the Philadelphia Commission on Human Relations.*

### III.   Exhaustion of Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on: _12/31/2020_ (*Date*).

B.   The Equal Employment Opportunity Commission (*check one*):

_____ has not issued a Notice of Right to Sue Letter.
__✓__ issued a Notice of Right to Sue Letter, which I received on _6/29/2021_ (*Date*).

**NOTE:** *Attach to this complaint a copy of the Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

C.   *Only plaintiffs alleging age discrimination must answer this question.*

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct (*check one*):

__✓__ 60 days or more have passed.
_____ fewer than 60 days have passed.

D.   It is my best recollection that I filed a charge with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct on: _____ (*Date*).

E.   Since filing my charge of discrimination with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct (*check one*):

__✓__ One year or more has passed.
_____ Less than one year has passed.

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: List of Attorneys for The Western District of PA - Attached
**Date:** Sat, Sep 18, 2021 8:53 am
**Attachments:** Antionette Barrett - 9-7-2021.pdf (44K), WDPA.pdf (19K),

<u>Sent from Yahoo Mail for iPhone</u>

Begin forwarded message:

On Tuesday, September 7, 2021, 3:48 PM, LOIS POWELL <LOIS.POWELL@EEOC.GOV> wrote:

Good afternoon,

Attached is a list of attorneys for the Western District of PA.

Regards,

Lois

***If you have any questions regarding your charge, please contact the EEOC Investigator that was assigned to your case.***

\*\*This list is provided to the Charging Party as a courtesy and it is the responsibility of the attorney/law firm to update their information with EEOC. Please note that some contact information may have changed and may require you to independently confirm their contact information.

Regards,

Lois A. Powell, Regional Attorney Secretary
EEOC - Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
267-589-9700 – EEOC Main Number
215-440-2848 - Facsimile
lois.powell@eeoc.gov



Due to COVID-19 and the current Public Health restrictions, the Equal Employment Opportunity Commission (EEOC) is limiting it's employee's contact with the public.  All contact with the EEOC will be by telephone, email and/or fax only.
<u>Please make sure that we have your most current Email address on file</u>

All information contained in this email message is confidential for use ONLY by the EEOC and the intended recipient(s).  If you are not an intended recipient, you are hereby notified that any use or dissemination of this communication is strictly prohibited.  If you have received this communication in error, please delete all copies of the message and it's attachments and notify the sender immediately.  Your receipt of this message is not intended to waive any applicable privilege.  Emails that are sent or received by the EEOC will be retained according to EEOC's record retention schedule.

# Attorney Referral for The Western District of PA

| County | Attorney | Statute | Court | Admittance | Experience | Fee | Fee waved? | Fee Arrangements | Additional Languages |
|--------|----------|---------|-------|------------|------------|-----|------------|------------------|---------------------|
| Allegheny | Gregory G. Paul<br>Robert Peirce & Associates<br>2500 Gulf Tower<br>707 Grant Street<br>Pittsburgh, PA 15219<br>P: 412-281-7229<br>F: 412-281-4229<br>gpaul@peircelaw.com | Title VII<br>ADA | EDPA<br>MDPA<br>WDPA<br>DWV | | http://www.peircela<br>w.com/ | None | Yes | Contingent | n/a |
| Allegheny | Samuel J. Cordes<br>Ogg, Cordes, Murphy & Ignelzi<br>245 Fort Pitt Blvd<br>Pittsburgh, PA 15222<br>P: 412-471-8500<br>F: 412-471-8503<br>scordes@ocmilaw.com | Title VII<br>ADEA<br>EPA<br>ADA | WDPA | PA-1989<br>OH-1988 | Since 1987<br>experience in<br>employment<br>litigation. | None | Yes | Contingent | n/a |
| Allegheny | C.J. Engel<br>Swenson Perer & Kontos<br>One Oxford Centre<br>301 Grant Street 2501<br>Pittsburgh, PA 15219<br>P: 412-281-1970<br>F: 412-281-2808<br>cjengel@spkpowerlaw.com | Title VII | WDPA | PA-2004 | http://www.spkpow<br>erlaw.com/bios.as<br>p | None | Yes | Contingent | n/a |
| Allegheny | Joseph H. Chivers<br>The Employment Rights Group<br>312 Boulevard of the Allies, Suite 600<br>Pittsburgh, PA  15222-1923<br>P: 412-227-0763 or 800-508-5367<br>F: 412-281-8481<br>jchivers@employmentrightsgroup.com | Title VII<br>ADEA<br>EPA<br>ADA | WDPA | PA-1983<br>DC-1985 | http://www.employ<br>mentrightsgroup.c<br>om/Employment-<br>Law-<br>overview/Employe<br>e-Benefits.shtml | $150 | Yes | Retainer and/or<br>contingent | n/a |
| Allegheny | Gregory T. Kunkel<br>Kunkel & Fink, LLP<br>4411 Stilley Rd., Suite 206<br>Brentwood, PA 15227<br>P: 412-885-3880<br>F: 412-885-3883<br>k.finklip@verizon.net | Title VII<br>ADEA<br>EPA<br>ADA | WDPA | PA, OH | I have practiced<br>exclusively in the<br>area of<br>employment<br>discrimination law<br>since 1988. | None | Yes | | n/a |

# Attorney Referral for The Western District of PA

| County | Attorney | Areas | | | Experience | Rate | Consult | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| Allegheny | Jon Pushinsky<br>Law office of Jon Pushinsky<br>1808 Law & Finance Building<br>Pittsburgh, PA 15219<br>P: 412-281-6800<br>F: 412-281-6808<br>jonpush@aol.com | Title VII<br>ADA | | PA-1979 | I maintain a general practice with a concentration in civil rights/civil liberties cases. | $150 | Yes | Retainer; Client pays costs and percentage | n/a |
| Allegheny | Colleen Ramage<br>JohnstonRothman Gordon<br>310 Grant Street, 3rd Floor<br>Pittsburgh, PA 15219-1604<br>P: 412-338-1131<br>F: 412-281-7304<br>crjohnston@rothmangordon.com | Title VII<br>ADEA<br>EPA<br>ADA | WDPA | PA-1992 | For the past 16 years, I have represented plaintiffs in actions under the ADA, ADEA, Title VII and EPA. | $300 | Yes | Contingent or Hourly | n/a |
| Allegheny | Melvin L. Vatz<br>Grossinger Gordon Vatz, LLP<br>1000 Law & Finance Building<br>Pittsburgh, PA 15219<br>P: 412-391-3030<br>F: 412-391-4150<br>mlv@ggvlaw.com | Title VII<br>ADEA<br>ADA | WDPA | PA-1976 | 20 years Employment Law experience in state and federal courts. | $250 | Yes | Dependent upon circumstances of case. Client generally must pay costs. | n/a |
| Allegheny | David F. Weiner<br>Carlin & Weiner<br>600 Grant St USX Tower, Suite 660<br>Pittsburgh, PA 15219<br>P: 412-391-2857<br>F: 412-261-2760<br>dfweiner@prosuites.com | Title VII<br>ADEA<br>EPA<br>ADA | WDPA | PA - 1974 | I am the founder and president of National Employment Law Association of Pittsburgh (NELA). | $200 | Yes | Retainer and Contingency fee. | n/a |
| Westmoreland | Timothy G. Hewitt<br>Industrial Relations, Inc.<br>215 Chester Street<br>Latrobe, PA 15650<br>P: 412-537-2620<br>F: 412-537-2679<br>indrelhewitt@aol.com | Title VII<br>ADEA<br>ADA | MDPA<br>WDPA | PA-1979<br>FL-1979 | | $150 | Yes | Hourly contingent blended | n/a |

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**
Legal Unit

801 Market Street
Suite 1000
Philadelphia, PA  19107-3127
Legal Unit Phone:  (267) 589-9700
TTY (215) 440-2610
FAX (215) 440-2848

September 7, 2021

Antionette Barrett
110 Spring Blossom Cir.
Beaver Falls, PA 15010

Dear Ms. Barrett:

In accordance with your recent request for assistance in obtaining legal representation in connection with your EEOC charge, we are providing you with the names of all the attorneys participating in our Attorney Referral Program in your area which you may contact in seeking legal assistance.

When you visit your selected attorney(s) or law firm, you should take the following documents with you:

1)      A copy of this referral letter,
2)      A copy of the charge,
3)      A copy of the EEOC's Determination and/or Notice of Right to Sue

Note that if you have been issued a Notice of Right to Sue, you have 90 days from the day of receipt to file a lawsuit or you will lose your right to sue.

Sincerely,

*Lois A. Powell*

Lois A. Powell
Regional Attorney Secretary

(Attachment/Email)

\* If you have any questions regarding your charge, please contact your EEOC Investigator that was assigned to your case.

\*\* This list is provided to the Charging Party as a courtesy and it is the responsibility of the attorney/law firm to update their information with EEOC.  Please note that some contact information may have changed and may require you to independently confirm their contact information.

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: Fwd: Fw: List of Attorneys for The Western District of PA - Attached
**Date:** Sat, Sep 18, 2021 9:34 am
**Attachments:**

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Saturday, September 18, 2021, 9:33 AM, Antoinette Stephens <ambstephens1@gmail.com> wrote:

---------- Forwarded message ---------
From: **Antoinette Stephens** <ambstephens1@gmail.com>
Date: Sat, Sep 18, 2021 at 9:32 AM
Subject: Re: Fw: List of Attorneys for The Western District of PA - Attached
To: toni barrett <toni_barrett@yahoo.com>

Thank you So much I greatly appreciate this snd all your help because Pittsburgh has done nothing but sent me on a wild goose chase and not even responded to my calls emails or nothing on top of saying my case is a Conflict of interest I have no case just let it go or get over it nothing I can do no call backs and Contacting my job and Co Worker and their family members telling them all my business where I'm constantly being harassed and if you need to being Mentally emotionally financial on top of the physical abuse and I have to live with the rest of my life, that's why I came to your office and I'm filing I. Philadelphia Pa where I can get a fair hearing and no must case is filed because I no it will and would not in Pittsburgh Pa . Thank you again
Sincerely
Antoinette M Barrett

On Sat, Sep 18, 2021 at 12:52 AM toni barrett <toni_barrett@yahoo.com> wrote:

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, September 7, 2021, 3:48 PM, LOIS POWELL <LOIS.POWELL@EEOC.GOV> wrote:

Good afternoon,

Attached is a list of attorneys for the Western District of PA.

Regards,


Lois


***If you have any questions regarding your charge, please contact the EEOC Investigator that was assigned to your case.***


**This list is provided to the Charging Party as a courtesy and it is the responsibility of the attorney/law firm to update their information with EEOC. Please note that some contact information may have changed and may require you to independently confirm their contact information.


Regards,


Lois A. Powell, Regional Attorney Secretary

EEOC - Philadelphia District Office

801 Market Street, Suite 1000

Philadelphia, PA 19107

267-589-9700 – EEOC Main Number

215-440-2848 - Facsimile

lois.powell@eeoc.gov





Due to COVID-19 and the current Public Health restrictions, the Equal Employment Opportunity Commission (EEOC) is limiting it's employee's contact with the public.  All contact with the EEOC will be by telephone, email and/or fax only.

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: Attorney Referral Lists
**Date:** Sun, Sep 19, 2021 9:53 pm
**Attachments:** 20201231 533-2019-02043 161 M3 No  Cause Barrett.pdf (307K)

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, June 29, 2021, 4:04 PM, JUANITA BARBER <JUANITA.BARBER@EEOC.GOV> wrote:

Hi Ms. Barrett,

This is the only NRTS I have for you.

Give me the case # if you think you have another charge.

Thank you,

# Juanita Barber

Investigator
Equal Employment Opportunity Commission
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA  15222
Work:  (412) 588-6916
Email: juanita.barber@eeoc.gov

**From:** JUANITA BARBER
**Sent:** Tuesday, June 29, 2021 9:27 AM
**To:** toni_barrett@yahoo.com
**Subject:** FW: Attorney Referral Lists

**From:** JUANITA BARBER
**Sent:** Tuesday, June 29, 2021 9:26 AM
**To:** poni_barrett@yahoo.com
**Subject:** Attorney Referral Lists

FYI.

Thank you,

# Juanita Barber

Investigator

Equal Employment Opportunity Commission
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA   15222
Work:  (412) 588-6916
Email: juanita.barber@eeoc.gov

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Antoinette Barrett**
    **110 Spring Blossom Circle**
    **Beaver Falls, PA 15010**

From:  **Pittsburgh Area Office**
    **1000 Liberty Avenue**
    **Room 1112**
    **Pittsburgh, PA 15222**

☐    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **533-2019-02043** | **Philadelphia,** **Legal Unit** | **(267) 589-9700** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Deborah A. Kane,**
**Director**

12/31/2020

*(Date Mailed)*

Enclosures(s)

cc:  **Brendalyn Burrell**
    **Employment Counsel**
    **DGS**
    **980 Virginia Ave.**
    **Atlanta, GA 30354**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Enclosure with EEOC
Form 161 (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# LAW OFFICES
## MATKOFF, SHENGOLD, BURKE, BLYWEISS & ARBITTIER
### ASSOCIATES, P.C.

DANIEL A. BLYWEISS
ARON ARBITTIER
ROBERT R. BURKE
_____

DAVID S. BERMAN
MICHAEL-JOHN GOODNOW
MAX GOLDBERG

1101 MARKET STREET
SUITE 2500
PHILADELPHIA, PA 19107
(215) 922-6073
FAX: (215) 922-5787

LOUIS MATKOFF 1933 – 2010
KENNETH SHENGOLD 1954 - 2003

DBlyweiss@matkoffshengold.com
AArbittier@matkoffshengold.com
RBurke@matkoffshengold.com
_____

DBerman@matkoffshengold.com
MJGoodnow@matkoffshengold.com
MGoldberg@matkoffshengold.com

January 8, 2021

**RE: EEOC**

Antoinette Barrett
110 Spring Blossom Circle
Beaver Falls, PA 15010

Dear Antoinette:

This letter has reference to our recent telephone conversation with regard to the above captioned matter.

At that time, we advised you to speak with Attorney Anthony DiJiacomo who may be able to assist you in this regard. However, if you have any further questions, please do not hesitate to contact our office. As you know there is no fee for our consultation.

Rest assured that it is always our pleasure to be of service to you, your family and friends in any legal matters that may arise.   For convenience we have offices in center city Philadelphia as well as Havertown, Delaware County.

Cordially yours,

**MATKOFF, SHENGOLD, BURKE
BLYWEISS, & ARBITTIER**

MJG/eo

**From:** toni_barrett@yahoo.com,
**To:** latanya.e@verizon.net,
**Subject:** Fw: NRTS/161 Position Statement
**Date:** Sun, Sep 19, 2021 9:52 pm
**Attachments:** 20201231 533-2019-02043 161   Barrett.pdf (307K), Position Statement RE Barrett.pdf (836K)

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Wednesday, September 8, 2021, 1:04 PM, toni barrett <toni_barrett@yahoo.com> wrote:

This is the first time I received and read this report together.

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, April 20, 2021, 12:04 PM, JUANITA BARBER <JUANITA.BARBER@EEOC.GOV> wrote:

Hi Ms. Barrett,

Attached you will find the documents.

Thank you,

# Juanita Barber

Investigator
Equal Employment Opportunity Commission
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA  15222
Work:  (412) 588-6916
Email: juanita.barber@eeoc.gov



**DAL Global Services, LLC.**
980 Virginia Avenue, Fourth Floor
Atlanta, Georgia 30354
brendalyn.burrell@unifiservice.com
Tel (470) 552-8060

BRENDALYN L. BURRELL
*Employment Counsel*

June 29, 2020

**Via Email (juanita.barber@eeoc.gov)**

Juanita Barber, Investigator
U.S. Equal Employment Opportunity Commission
Pittsburgh Area Office
1000 Liberty Avenue
Room 1112
Pittsburgh, PA 15222

      Re:  *Antionette Barrett v. DAL Global Services, LLC*
            EEOC Charge No. 533-2019-02043

Dear Ms. Barber:

      This letter and accompanying documents set forth the position of DAL Global Services, LLC ("DGS") with respect to the above-referenced charge of discrimination filed by Antionette Barrett.[1]  In her charge, Ms. Barrett alleges claims of discrimination based on her race, sex, age, religion, and retaliation.  Specifically, Ms. Barrett alleges that she was subjected to harassment of others and denied Sundays off although individuals with less seniority were granted that day off and nothing was done after she complained.  She further alleges that her supervisor refused her request to leave work due to the harassment and as a result she was injured by a co-worker and DGS has refused to allow her to return to work despite her release to return to light duty.  As explained below, Ms. Barrett's charge should be dismissed because there is no evidence supporting her claims.

      As an aviation services provider, DGS provides various aviation services for its airline clients at airports throughout the country.  In November 2018, DGS hired Ms. Barrett to work as

---

[1] The statements set forth in this response are being submitted based on DGS' current understanding of the facts and solely for the purpose of cooperating with the U.S. Equal Employment Opportunity Commission's ("Commission") investigation.  This response, although believed to be true and correct, does not constitute an affidavit and is not intended to be used as evidence of any kind in future proceedings.  DGS does not intend to waive any defenses it may have to the allegations or in any way prejudice itself with respect to any issue, whether procedural or substantive in nature, and expressly reserves the right to assert additional defenses not included in this response. DGS also respectfully requests that the Commission treat the information contained in this response, and attachments hereto, as confidential records.

*Antionette Barrett v. DAL Global Services, LLC*
EEOC Charge No. 533-2019-02043

a Ramp Agent at Pittsburgh International Airport in Pittsburgh, Pennsylvania ("PIT Airport"), which is the position she currently holds with the Company. Her responsibilities include marshalling aircraft in and out of the gate, loading and unloading passenger bags, and cleaning aircraft cabins. This position requires each employee to constantly walk, climb, squat, kneel, bend, and lift, carry, push, or pull up to 70 pounds. To that end, all work schedules and assignments are based on business demands and employee availability without regard to employees' race, age, sex, religion, or any other protected characteristic. In January 2019, Ms. Barrett reported to DGS that she had sustained a work-related injury. After seeking medical treatment, Ms. Barrett's physician recommended work restrictions that required her to wear a splint or brace, use a crutch as needed, sit 75% of the time, and not to squat, kneel, or push, pull, or lift more than 10 pounds. Ms. Barrett's restrictions prevented her from performing essential functions of her job and DGS did not have alternate work available that she was capable of performing. Even though she was ineligible for leave under the Family and Medical Leave Act ("FMLA"), DGS reasonably accommodated her by allowing her to take an extended leave of absence to recover from her work restrictions. Furthermore, DGS is unaware of Ms. Barrett ever complaining to Human Resources or management personnel about alleged harassment or discrimination prior to reporting her alleged work-related injury. Accordingly, as further outlined below, Ms. Barrett has offered no evidence to show that DGS unlawfully discriminated or retaliated against her during her employment. Her charge, therefore, should be dismissed.

**ABOUT DGS**

As an aviation services provider in the aviation industry, DGS offers a wide variety of aviation services for its airline clients including: (a) ramp services such as loading and unloading baggage and cargo, operating ground service equipment used in performing many of these tasks (e.g., tugs, belt ladders, baggage carts, etc.), and marshaling aircraft in and out of gates; (b) cabin cleaning services such as cleaning aircraft cabins in between flights or overnight and emptying aircraft lavatories; and (c) passenger services such as ticketing passengers, checking in baggage and boarding and deplaning passengers at airport gates. At the PIT Airport, DGS currently provides ramp and cabin cleaning services for Delta Air Lines, Inc.

**DGS' ANTI-DISCRIMINATION AND ANTI-HARASSMENT POLICY**

DGS has established an Anti-Discrimination and Anti-Harassment Policy that is contained in its Employee Handbook, which is made available to all employees. In addition to the Handbook, employees are notified by DGS' President of, among other things, the following:

> DGS is committed to providing a safe and respectful work environment free of unnecessary and inappropriate distractions. DGS believes that a work environment free of discrimination, intimidation and harassment is essential for a productive and efficient work force. Consequently, DGS prohibits discrimination and harassment based on race, color, sex, pregnancy, religion, national origin, creed, age, citizenship status, arrest record, marital or familial status, sexual orientation, gender identity, gender expression, parental status or disability (physical or mental), genetic information, veteran status, HIV/AIDS status,

*Antionette Barrett v. DAL Global Services, LLC*
EEOC Charge No. 533-2019-02043

> political affiliation and any other characteristics protected under
> federal, state or local laws.

The Employee Handbook also sets forth the process for employees to report any concerns or complaints of discrimination, harassment or any type of inappropriate behavior, including a third-party employee "Hotline" for employees to contact at all times throughout the year (i.e., 24/7). DGS also has a non-retaliation policy, which states that, "There shall be no retaliation by DGS, its managers, supervisors or other employees toward any employee bringing a complaint or cooperating with the investigation of a harassment complaint." (See, Exhibit A – Statement Against All Forms of Harassment.)

## MS. BARRETT'S EMPLOYMENT WITH DGS

On November 5, 2018, DGS hired Ms. Barrett to work as a Ramp Agent. Her responsibilities include ramp and cabin cleaning services and performing any other duties as assigned by her supervisor or manager. Her position requires the ability to constantly walk, climb, squat, kneel, bend and lift, carry, push, or pull up to 70 pounds. These duties are performed in a diverse environment under the supervision of a supervisor or manager on duty. (See, Exhibit B – Ramp Agent Job Description.)

Work schedules and shifts are based on operational needs and employee availability. As many of DGS' employees have multiple jobs, DGS makes every effort to accommodate employees' conflicting work schedules or other related conflicts. To that end, as Ms. Barrett expressed a desire to be scheduled so that she would be able to attend Sunday morning church service, DGS adjusted her Sunday work schedule accordingly. Specifically, Ms. Barrett was generally scheduled to work Wednesday through Saturday, 11:30 a.m. to 7:30 p.m., and Sunday, 2:00 p.m. to 8:00 p.m.

On January 28, 2019, Ms. Barrett reported to work for her scheduled shift.[2] Ms. Barrett subsequently notified DGS that she was not feeling well and reported concerns about her "blood sugar." Thereafter, Ms. Barrett requested to leave work early, which DGS approved and authorized her to leave work prior to the end of her shift. Prior to leaving work, Ms. Barrett did not report being injured while at work. Similarly, no other employees reported Ms. Barrett being injured during her shift or any other work-related issues.

Later that evening, via text message, Ms. Barrett mentioned for the first time that she had sustained an injury while at work earlier that day. On February 15, 2019, Ms. Barrett received medical treatment and was advised by her physician to wear a splint or brace, use a crutch as needed, sit 75% of the time, and not to squat, kneel, or push, pull, or lift more than 10 pounds. (See, Exhibit C –Physician Work Activity Status Report). DGS advised Ms. Barrett that due to her apparent inability to perform the various physical requirements of her position, and the fact that there were no other viable work solutions, DGS would allow her to take a leave of absence to recover from her work restrictions. As Ms. Barrett had only been employed with DGS for twelve weeks at the time, she was not eligible for a leave of absence under the FMLA.

---

[2] Ms. Barrett requested additional work hours and, as a result, on January 28, 2019, she was scheduled to work a shift that she did not normally work (i.e., 4:30 a.m. – 11:30 a.m.).

*Antionette Barrett v. DAL Global Services, LLC*
EEOC Charge No. 533-2019-02043

Ms. Barrett filed her charge on November 17, 2019. At the time, she continued to have significant work restrictions that prevented her from performing essential functions of her job, with or without an accommodation. In fact, Ms. Barrett's physician recommended "No work" until at least January 2020. (See, Exhibit D – Work Status Update.) On February 24, 2020, Ms. Barrett's physician cleared her to work sedentary work; however, she remained unable to perform essential functions of her job and DGS did not have alternate work available within her restrictions. (See, Exhibit E – Progress Notes.) DGS is unaware of any additional updates regarding Ms. Barrett's condition.

Due to the COVID-19 crisis DGS has furloughed 14,000 employees, including a majority of the employees at the PIT Airport, as demand for DGS' services has dropped by at least 80%. Nonetheless, Ms. Barrett remains employed with DGS and DGS looks forward to her return to work when normal business operations resume and she is able, with or without an accommodation.

## MS. BARRETT'S ALLEGATIONS OF DISCRIMINATION AND RETALIATION

In her charge, Ms. Barrett asserts claims of race, sex, religion, and age discrimination, as well as retaliation. Specifically, Ms. Barrett alleges that she was subjected to discrimination and harassment and retaliated against her after she complained. DGS adamantly denies these claims. As explained in greater detail above, as a Ramp Agent, Ms. Barrett was required to constantly walk, climb, squat, kneel, bend and lift, carry, push, or pull up to 70 pounds. As such, DGS reasonably accommodated her work restrictions by allowing her to take an extended leave of absence to recover from her injury. Since Ms. Barrett was not eligible for a leave under the FMLA, DGS accommodated her by allowing her to take an authorized leave of absence until she is able to safely return to work. Indeed, at the time Ms. Barrett filed her charge, she was on an authorized leave of absence as her physician had recommended that she not work at all for at least the next couple months. (See, Exhibit D.) Similarly, based on the last update DGS received regarding Ms. Barrett's condition, she remains unable to perform essential functions of her position, with or without an accommodation. (See, Exhibit E.) Furthermore, DGS is unaware of Ms. Barrett ever complaining to Human Resources or management personnel about alleged harassment or discrimination prior to her alleged work-related injury. Her claims are further undermined by the fact that DGS is unaware of her specific religious beliefs and unaware of her ever requesting a religious accommodation other than expressing a desire to be scheduled so that she would be able to attend Sunday morning church service, which DGS did in fact accommodate from the beginning of her employment. Moreover, Ms. Barrett's immediate supervisor is in one of the same protected classes as Ms. Barrett – over 40. Since there is no evidence that DGS discriminated or retaliated against Ms. Barrett, her claims should be dismissed.

*Antionette Barrett v. DAL Global Services, LLC*
EEOC Charge No. 533-2019-02043

## SUMMARY

Based on the foregoing, DGS respectfully requests that the Commission dismiss this charge. Should you require additional information please do not hesitate to contact me at (470) 552-8060 or brendalyn.burrell@unifiservice.com.

Sincerely,

Brendalyn L. Burrell
*Employment Counsel*

5



## STATEMENT AGAINST ALL FORMS OF HARRASSMENT

DGS is committed to providing a safe and respectful work environment free of unnecessary and inappropriate distractions. DGS believes that a work environment free of discrimination, intimidation and harassment is essential for a productive and efficient work force. Consequently, DGS prohibits discrimination and harassment based on race, color, sex, pregnancy, religion, national origin, creed, age, citizenship status, arrest record, marital or familial status, sexual orientation, gender identity, gender expression, parental status or disability (physical or mental), genetic information, veteran status, HIV/AIDS status, political affiliation and any other characteristics protected under federal, state or local laws.

Sexual Harassment includes: (1) unwelcome sexual advances and other verbal or physical conduct where submission to the advances or conduct is made a term or condition of employment or is used as the basis of employment decisions; and (2) unwelcome verbal or physical conduct of a sexual nature that interferes with an employee's work or creates a hostile, intimidating or offensive work environment.

DGS also prohibits harassment of any kind, including verbal or physical conduct, that denigrates or shows hostility or dislike toward an individual based upon any of the characteristics list above that (1) creates a hostile, intimidating or offensive work environment; or (2) unreasonably interferes with an individual's work performance.

### COMPLAINT PROCESS

- If you believe you have been subjected to conduct that you believe violates the above policy, you must promptly speak to, write or other contact (a) your DGS supervisor, manager, department head or any other member of management, (b) your HR Business Partner assigned to their location (or the DGS Human Resources department), or (c) contacting the DGS Hotline (877-808- 4902) or via www.DGSHelpLine.com. You should select the reporting option with which you are most comfortable.

- All complaints will be promptly investigated and confidentiality will be maintained throughout the investigation to the extent practical.

- If you do not report possible violations of this policy, DGS may not become aware of the violations and will be unable to promptly investigate and take any appropriate corrective action.

- There shall be no retaliation by DGS, its managers, supervisors or other employees toward any employee bringing a complaint or cooperating with the investigation of a harassment complaint.

- Once the investigation is concluded, DGS will take prompt appropriate action based upon its findings, which will be communicated to the employee(s) who made the complaint.

All officers, directors, and management personnel are responsible for implementing and ensuring compliance with and knowledge of the Company's policies and procedures regarding harassment, and working with Human Resources to take immediate and appropriate action to stop any observed harassment. Failure to do so may result in disciplinary action up to and including discharge.

Adam Taylor





DAL Global Services
**Ramp Agent-Job Description**
Date Revised: 05/10/2010

**Department:** Aviation
**FLSA Status:** Non-Exempt
**Work Schedule:**
Must be able to work rotating shifts and hours, nights, weekends and holidays. Some overtime may be required.

**Job Code:** AGT-Ramp
**Reports To:** Lead Agent or Supervisor

## POSITION SUMMARY

Under the supervision of lead agent and/or supervisor on duty ramp agents are responsible for marshalling aircraft in and out of the gate, loading, unloading and sorting freight, mail and baggage in a safe manner while also achieving on-time departures and arrivals. Ramp Agents may also be responsible for servicing aircraft lavatories, cleaning aircraft, restocking items, deicing and other duties as delegated.

## ESSENTIAL FUNCTIONS/TASKS

- Marshalls aircraft on the ramp including directing, assisting and parking all arriving, departing and towed aircrafts in accordance with safety policy and procedures.
- Performs wing walker duties to protect the aircraft wing from equipment in the path of pushback and maintains visual contact with the pushback driver to alert the driver of any danger.
- Lifts, loads/unloads, sorts and transfers passenger baggage, airmail, freight and company material in and out of aircraft bins, belt loader or baggage carts in a safe manner and within specific time constraints.
- Maintains safety and security of the ramp at all times and complies with safety procedures and station policies.
- Drives/operates ramp equipment including but not limited to bag tugs, belt loaders, aircraft tow tractors and water and lavatory servicing vehicles in a safe manner.
- Reads and verifies the city and flight number for every bag to ensure correct loading of customer bags.
- Communicates with Operations, Flight Crew personnel and other ground personnel concerning arrival/departure information in a professional manner.
- Arrives to work on time and at assigned post to ensure prompt servicing of the aircraft and on time departures.
- May work in the baggage make-up area and prioritize baggage load for delivery to the proper aircraft for loading.
- Depending on the station location employee may be assigned cabin service functions which include servicing the aircraft as needed to include cleaning lavatories and cabin and restocking supplies and other items.
- Other duties as assigned.

## KNOWLEDGE, SKILLS & ABILITIES

Knowledge of DGS, Safety, Security, Ramp, FAA, Airport, OSHA,USPS, Flight Schedules and Station policies and procedures. **MENTAL ABILITIES**: Must be able to follow directions, read and interpret documents.

### Competency Statement(s)

- Safety - Ability to follow established safety policy and procedures and identifies and corrects conditions that affect safety in the workplace and must be able to wear Personal Protective Equipment (PPE) such as reflective vest, gloves, safety glasses, steel-toed boots, and ear plugs.
- Attendance and Reliability –Ability to maintain regular attendance and report to work on time and at assigned post at the start of the shift.



Competency Statement(s) continued                                                                 **Page 2**

- Accuracy - Ability to perform work accurately and thoroughly to ensure that all items loaded or unloaded are on the correct flight.
- Diversity - Ability to work in a friendly, respectful and professional manner with people regardless of their age, gender, race, ethnicity, religion, national origin, disability etc..
- Honesty/Integrity/Ethical Standards – Ability to maintain high morale standards and be honest and ethical while performing job duties and handling customer belongings.
- Communication - Ability to communicate in a professional manner with others orally or written and actively attend to, convey and understand the comments and questions of others.
- Customer Service Oriented - Ability to take care of the customers' needs and personal belongings while following company procedures.
- Organizational/Time Management-Ability to work in an organized fashion and under tight time constraints to service and accomplish quick turns of aircraft.
- Teamwork – Ability to work with others as a team to perform and complete job duties.
- Adaptability - Ability to adapt to change in the workplace such as working different flight schedules, locations, assignments, shifts or working at various paces.

**EDUCATION:** High School Graduate or General Education Degree (GED) is preferred.

## OTHER REQUIREMENTS

Must be 18 years of age; eligible to work in US; able to pass pre-employment drug screen, FBI criminal and USPS background check; and complete ramp and SIDA training to obtain airport authority identification security badge. **LICENSE(S):** Must possess a valid Driver's License for operating ground support equipment.

## PHYSICAL REQUIREMENTS

| Physical Requirement | Frequency | Physical Requirement | Frequency |
|---|---|---|---|
| Lift/carry up to 70 lbs | C (Constantly) | Reach Above Shoulder | C (Constantly) |
| Lift/carry greater than 70 lbs | F (Frequently) | Climb/Crawl | C (Constantly) |
| Push/Pull up to 70 lbs | C (Constantly) | Stoop, Squat, Kneel, Bend | C (Constantly) |
| Walk/Stand | C (Constantly) | Handling /Fingering | C (Constantly) |
| Sit | O (Occasionally) | Reach/Grasp Outward | C (Constantly) |

| | |
|---|---|
| **O (Occasionally)** | Occupation requires this activity up to 33% of the time (0 - 2.5+ hrs/day) |
| **F (Frequently)** | Occupation requires this activity from 33% - 66% of the time (2.5 - 5.5+ hrs/day) |
| **C (Constantly)** | Occupation requires this activity more than 66% of the time (5.5+ hrs/day) |

**Other Physical Requirements**

Vision (Near, Distance, Peripheral, Depth Perception)-Must be able to observe, judge distances, identify surroundings, hazards, aircrafts and equipment.
Sense of Sound/Hearing – Must be able to communicate by radio and other devices.

## WORK ENVIRONMENT

While performing the duties of this job the employee works in confined spaces and under tight time constraints to service or turn the aircraft and is regularly exposed to outside weather conditions including rain, snow, sun and extreme cold and extreme heat. The employee is frequently exposed to moving mechanical parts such as propellers and jet fans and works in and around moving aircrafts and vehicles and is exposed to fumes or airborne particles. Employee may spend some of work time in baggage sorting room. The noise level in the work environment is usually loud. The pace of the work varies and is often fast paced in order to load, unload and dispatch the aircraft to prevent flight delays. The pace of work depends on the flight schedule, flight delays, weather conditions and passenger volume.

This job description is intended to provide guidelines for job expectations and the employee's ability to perform the position described. It is not intended to be construed as an exhaustive list of all functions, responsibilities, skills and abilities. Particular functions, tasks and requirements may vary or be added depending upon the location and operational requirements. This document does not represent a contract of employment and the company reserves the right to change this job description and/or assign tasks for the employee to perform, as the Company may deem appropriate.

EOE M/F/D/V

Claim Number: 013565 000201 WC 01

**Concentra Medical Centers (PA)**
15 Freeport Rd Ste 100 ASPINWALL, PA. 15215
Phone: (412) 784-1675   Fax: (412) 784-1722

Service Date: 02/15/2019
Case Date:   01/28/2019

## Physician Work Activity Status Report

Patient:  Barrett, Antoinette M.          SSN:   XXX-XX-6335

Address: 110 Spring Blossom Cr           Employer Location: DGS-Pit-DL          Contact: William Clark
         BEAVER FALLS, PA 15010          Address:   Pittsburgh International Airpo   Role:   Unspecified
Home:    (602) 367-4726                            Pittsburgh, PA 15231          Phone:  (412) 472-5348   Ext.:
Work:              Ext.:       Auth. by:   SV                                   Fax:    (412) 472-5349

---

**This Visit:** Time In: 01:16 pm        Time Out: 02:08 pm          **Visit Type:**  Recheck

**Treating Provider:**  Rebecca A. Fillipih, PA

**Diagnosis:**                                                     **Medications:**

841.9   S63.501A  UNSPECIFIED SPRAIN OF RIGHT WRIST, INITIAL       ☐ Dispensed Prescription Medication to Patient
                  ENCOUNTER-S63.501A
841.9   S53.401A  UNSPECIFIED SPRAIN OF RIGHT ELBOW, INITIAL       ☐ Dispensed Over-The-Counter Prescription
                  ENCOUNTER-S53.401A
843.8   S83.92XA  SPRAIN OF UNSPECIFIED SITE OF LEFT KNEE,         ☐ Written Prescription given to Patient
                  INITIAL ENCOUNTER-S83.92XA

---

**Patient Status:**

### Modified Activity - Returning for follow-up visit

#### Restricted Activity (in effect until next physician visit):

          Return to work on 02/15/2019 with the following restrictions
          Should be sitting 75 % of the time
          May lift up to 10 lbs Constantly -- up to 8 hrs or greater per day
          May push/pull up to 10 lbs Constantly -- up to 8 hrs or greater per day
          No squatting
          No kneeling
          Wear Splint/Brace LLE - Constantly -- up to 8 hrs or greater per day
          Patient is able to work their entire shift

Remarks:   Returning for follow-up:  5 days;TS:NEED to start Physical Therapy!;TS:NEED to start Physical Therapy!;General
           Restrictions:ADDITIONAL RESTRICTIONS AND LIMITATIONS: limit crutch use may use 1 only as needed

---

**Employer Notice:**   The prescribed activity recommendations are suggested guidelines to assist in the patient's treatment and rehabilitation. Your
                       employee has been informed that the activity prescription is expected to be followed at work and away from work.

---

**Next Visit(s):**   **Patient Notice:**   It is essential to your recovery that you keep your scheduled appointments, but should you need to
                     reschedule or cancel your appointment, please contact the clinic. Thank you for your cooperation.

Referral:   Visit Date:       Wednesday February 27, 2019   12:45 a
            Provider/Facility: Victoria CAS-Langa                         Phone: (412) 784-1678
                              15 Freeport Rd Ste 100   Pittsburgh, PA 152152905   Fax: (412) 784-1722

            Visit Date:       Wednesday February 27, 2019   11:45 a
            Provider/Facility: Alexia D. Zgurzynski, DO

            Visit Date:       Wednesday February 27, 2019   12:45 p
            Provider/Facility: Victoria M. Langa, MD



Page 1 of 1

Barrett, Antoinette    Scan on 11/1/2019 by Starr, Jennifer L of 10/31/19 TRO WORK STATUS FORM

# UPMC LIFE CHANGING MEDICINE

**Work Status Update**
**Three Rivers Orthopedic Associates Contact**
**412-784-7920 (Phone)**
**412-782-3993 (Fax)**

*Three Rivers Orth*

```
ENC #: 87645830
Name: BARRETT, ANTOINETTE
MRN: 741751137  DOB: 2/16/1955
Dept: THREE RIVERS SMOT OFC
Date: 10/31/19  Time: 1:45 PH
Prov: BAUM, JEFFREY A
Ins: GALLAGHER BASSETT SRVC UC
Reason: UC RET F/U BACK# 01188741
```

Patient Name: _____    ___ntment Date: _____

Date of Injury: _____    __ of Birth: _____

Work Comp Insuranc _____

**Diagnosis:** R/L/Bilateral  *Patellofemoral Replacement*

**Work Status:**
☐ Full duty effective _____
☒ No work
☐ Return to work with the following restrictions effective _____
*(Note: Work Status is effective the date of the appointment unless otherwise noted.)*

**Restrictions:**

☐ Sedentary Work — 10 lbs. max lift/carry/push/pull  Walk/stand on occasion
☐ Light Work — 20 lbs. max lift/carry/push/pull  10 lbs. frequently  Walk/stand on occasion
☐ Medium Work — 50 lbs. max lift/carry/push/pull  25 lbs. frequently  Walk/stand frequently
☐ Heavy Work — 100 lbs. max lift/carry/push/pull  50 lbs. frequently  Walk/stand frequently
☐ Very Heavy Work — >100 lbs. lift/carry/push/pull  50 lbs. frequently  Walk/stand frequently

☐ No lift/carry/push/pull over _____ pounds    ☐ No stand/sit/walk over _____ hours
☐ No use of right/left hand/foot    ☐ No bend/climb/crawl/kneel/squat/reach/twist
☐ No lifting overhead    ☐ No driving
☐ No repetitive use right/left hand/foot    ☐ No driving more than _____ hours/day
☐ No temperature extremes    ☐ No driving standard shift
☐ OTHER _____

**Treatment Plan:**
☒ Physical Therapy    ☐ Occupational Therapy
☐ Injection  ☐ Splint  ☐ Cast  ☐ Brace  ☐ Diagnostics _____
☐ Surgery _____  Date: _____
☐ Referred to _____  Date/Time: _____
☐ Other _____
☒ Follow Up Date/Time: *2 month*    ☐ PRN    ☐ MMI _____ (Date)

**Physician:**

☐ Jeffrey A. Baum, MD    ☐ Alex J. Kline, MD    ☐ Michael Mentzer, PA-C
☐ Franklin H. Chou, MD    ☐ Edward J. McClain III, MD    ☐ William (BJ) Vascik, PA-C
☐ Michael B. Gaffney, MD    ☐ Spiro N. Papas, MD
☒ Carl T. Hasselman, MD    ☐ Vincent J. Silvaggio, MD
☒ Fred P. Heidenreich Jr., MD    ☐ Patrick N. Smith, MD

**Provider's Signature:** X _____    **Date:** 10/31/19

*(Updated October 2018)*

EXHIBIT A

Barrett, Antoinette DOB: 02/16/1968

Page 1 of 1

# Barrett, Antoinette

MRN: 741751137

Heidenreich, Fred P Jr., MD     Progress Notes     Encounter Date: 10/31/2019
Physician                   Signed
Orthopaedics

BARRETT, ANTOINETTE
DOB:    02/16/1968
DOV:    10/31/2019

### Office Note

**HISTORY OF PRESENT ILLNESS:** Ms. Barrett is 4-month status post patellofemoral knee replacement, 2-month status post closed manipulation. She reports the knee is coming along. She has been doing physical therapy, which has been very helpful, water therapy in particular. She is now ambulating with a cane.

**PHYSICAL EXAMINATION:** Today, the left knee incision is clean, dry and nonerythematous. Motion is from full extension to 120 degrees of flexion. No appreciable effusion. No tenderness over the quad tendon, patella, patellar tendon, medial or lateral joint line. She reports some numbness lateral to the incision, which I explained is normal.

**IMAGING:** No new x-rays today.

**IMPRESSION:** Doing very nicely after left patellofemoral knee replacement. Ms. Barrett will progress with her water therapy and gradual increased walking and activity. I would like to see her back in 2 months. Hopefully, we will be able to have her return to work in some form in January.

Fred P. Heidenreich, JR., M.D.

D: 10/31/2019 03:02PM, FPH T: 11/01/2019 02:36AM, hn R:
Confirmation # M3120093/ Document ID: 14192399

Last signed by: Heidenreich, Fred P Jr., MD at 11/7/2019 12:16 PM

Office Visit on
10/31/2019

00293

Barrett, Antoinette (MRN 741751137) DOB: 02/16/1968

Encounter Date: 02/24/2020
Bowser, Elisabeth
2/24/2020  8:15 AM
Signed

**Nursing Note**

Left partial  Knee replacement
Still unable to do steps
Numbness, tingling  Cant feel knee at times
Feels like left leg is shorter

Heidenreich, Fred P Jr., MD (Physician)
Orthopaedics
2/24/2020 12:00 AM
Signed

**Progress Notes**

BARRETT, ANTOINETTE
DOB:    02/16/1968
DOV:    02/24/2020

**Office Note**

HISTORY OF PRESENT ILLNESS:  Ms. Barrett is status post left patellofemoral knee replacement for patellofemoral arthritis and recurrent dislocation.  She reports the knee is still weak.  She has difficulty trying to go up and down steps.  It does not feel stable for her.  She notes a little numbness lateral to the incision.  She also reports the left leg feels a little shorter than the right.

PHYSICAL EXAMINATION:  Today, her incision is nicely healed.  There is no effusion.  Motion today is from full extension to 130 degrees of flexion.  Good patellar mobility.  No significant tenderness over the medial or lateral joint line or proximal tibia.  The knee is stable to varus and valgus stress.  Good knee extension strength.  However, quadriceps does still have very marked atrophy compared to the right.

IMAGING:  AP, lateral and Merchant x-rays of the left knee show patellofemoral knee replacement. Components appear in good position.  The patella is nicely centrally located on the trochlear groove.  There is some medial joint space narrowing.

IMPRESSION AND PLAN:  Doing well after left patellofemoral knee replacement.  Ms. Barrett needs to really work on her quad strengthening long-term.  Her normal work involves a lot of squatting, kneeling, climbing in and out of things.  She is not able to do that clearly yet.  I did clear her to return to sedentary work if that is available.  No steps, squatting, or kneeling.  I would like to see her back in 3 months' time.  She will continue her physical therapy.  The main thing she needs to do is rebuild her quadriceps strength.  She is also going to work on some gradual long-term weight loss.  No x-rays are needed at next visit.  She may use ibuprofen or Aleve as needed for any discomfort.

Fred P. Heidenreich, JR., M.D.

D: 02/24/2020 08:52AM, FPH  T: 02/24/2020 09:50AM, hn  R:
Confirmation # M3244749/ Document ID: 14553994



Barrett, Antoinette DOB: 02/16/1968

Case 2:21-cv-04183-PD   Document 1-15   Filed 09/22/21   Page 30 of 42

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Antoinette M. Barrett** | Social Security number or ITIN   xxx-xx-6335 |
| | First Name   Middle Name   Last Name | EIN   __-_____ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN   ____ |
| | | EIN   __-_____ |
| United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA** | | |
| Case number:   19-24890-CMB | | |

# Order of Discharge

12/15

IT IS ORDERED: A discharge under 11 U.S.C. § 727 is granted to:

Antoinette M. Barrett
aka Antoinette M. Stephens, fka Antoinette M.
Clarke, fka Antoinette M. Brown

4/15/20

By the court:   Carlota M. Bohm
United States Bankruptcy Judge

---

## Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

### Creditors cannot collect discharged debts

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

### Most debts are discharged

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**For more information, see page 2 >**

**Some debts are not discharged**
Examples of debts that are not discharged are:

- ♦ debts that are domestic support obligations;

- ♦ debts for most student loans;

- ♦ debts for most taxes;

- ♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- ♦ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

- ♦ some debts which the debtors did not properly list;

- ♦ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

- ♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

> **This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**